IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MLR ATLANTA, LLC,

    Plaintiff,

v.

GLOBAL RUGBY VENTURES LLC, and
RUGBY FOOTBALL CLUB LA LLC,

    Defendants.

C.A. No. 1:24-cv-00527-JLH

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION**

Dated: December 10, 2024

OF COUNSEL:

Brent R. Owen
**HAYNES AND BOONE, LLP**
675 15th Street, Suite 2200
Denver, Co 80202
(303) 382-6242
brent.owen@haynesboone.com

Julian E. Sharp
**HAYNES AND BOONE, LLP**
1221 McKinney Street, Suite 4000
Houston, TX 77010
(713) 547-2333
julian.sharp@haynesboone.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Gregory E. Stuhlman (#4765)
Ryan M. Lindsay (#6435)
Mariska Suparman (#7271)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
stuhlman@chipmanbrown.com
lindsay@chipmanbrown.com
suparman@chipmanbrown.com

*Attorneys for Plaintiff MLR Atlanta, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ...................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 1

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 5

    I.    THE PARTIES AGREED TO EXCLUSIVELY LITIGATE DISPUTES RELATED TO THE SALE OF THE TEAM IN DELAWARE COURTS. ............. 6

        A.    The APA's forum-selection clause requires GRV to litigate all disputes related to the sale of the Team in Delaware courts. ........................ 6

        B.    The Rugby LA Agreement's forum-selection clause requires Rugby LA to litigate all disputes related to the sale of the Team in Delaware courts. ............................................................................................. 6

        C.    The forum-selection clauses supersede the Arbitration Clause. ................... 9

    II.    ATLANTA IS NOT A MEMBER OF MLR. ........................................................... 11

    III.    DEFENDANTS WAIVED THE RIGHT TO ARBITRATION BY LITIGATING THIS CASE FOR A YEAR AND ASSERTING COUNTERCLAIMS IN THIS COURT. ............................................................... 14

    IV.    JURISDICTIONAL DISCOVERY ......................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Life Ins. Co. v. Parra*,
 25 F. Supp. 2d 467 (D. Del. 1998) ............................................................................................ 5, 9

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*,
 2011 WL 4552508 (Del. Ch. Sept. 14, 2011) ................................................................................ 5

*Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*,
 2024 WL 1554184 (Del. Super. Ct. Apr. 10, 2024) ............................................................... 7, 15

*Citadel Holding Corp. v. Roven*,
 603 A.2d 818 (Del.1992) .............................................................................................................. 5

*Decoration Design Sols., Inc. v. Amcor Rigid Plastic USA, Inc.*,
 2020 WL 6482696 (D.N.J. Nov. 4, 2020) .................................................................................... 7

*J. Ambrogi Food Distrib. v. Teamsters Loc. Union No. 929*,
 705 F. Supp. 3d 406 (E.D. Pa. 2023) ......................................................................................... 15

*Johnson v. ACE Cash Express, Inc.*,
 2014 WL 3721947 (D. Del. July 24, 2014) .................................................................................. 5

*Morgan v. Sundance, Inc.*,
 596 U.S. 411 (2022) ................................................................................................................... 14

*PPL Corp. v. Riverstone Holdings LLC*,
 2019 WL 5423306 (Del. Ch. Oct. 23, 2019) ............................................................................ 7, 8

*Scherk v. Alberto–Culver Co.*,
 417 U.S. 506 (1974) ..................................................................................................................... 5

*United States v. Olano*,
 507 U.S. 725 (1993) ................................................................................................................... 14

*Valli v. Avis Budget Rental Car Grp., LLC*,
 2023 U.S. Dist. LEXIS 181799 (D.N.J. Oct. 10, 2023) ............................................................. 14

*White v. Samsung Elecs. Am., Inc.*,
 61 F.4th 334 (3d Cir. 2023) ............................................................................................. 5, 14, 15

Plaintiff MLR Atlanta, LLC ("Atlanta") responds to Defendants Global Rugby Ventures LLC ("GRV") and Rugby Football Club LA LLC's ("Rugby LA") Motion to Stay and Compel Arbitration.

## NATURE AND STAGE OF PROCEEDINGS

On April 29, 2024, Atlanta filed its Complaint against Defendants. D.I. 1. Defendants separately answered the Complaint on June 13, 2024, with GRV also asserting counterclaims. D.I. 13, 14. Following Atlanta's motion to dismiss GRV's counterclaims, D.I. 25, GRV filed its first amended counterclaims on August 30, 2024 (the "Counterclaims"). D.I. 32. Plaintiff moved to dismiss the Counterclaims on September 23, 2024. D.I. 39.

## SUMMARY OF ARGUMENT

Atlanta respectfully requests that this Court deny Defendants' motion for the following reasons:

1.  Defendants agreed to litigate this dispute in this Court when they both agreed to forum-selection clauses making Delaware courts the exclusive venue for this dispute.

2.  The arbitration clause that Defendants rely on does not apply to Atlanta because the clause only applies to Members, as defined by the contract containing the clause, and Atlanta is not a Member under that definition.

3.  The Defendants waived their right to arbitration when they actively litigated this action without moving to compel arbitration.

## INTRODUCTION

Atlanta sold assets of a Major Leage Rugby ("MLR") team (the "Team") to GRV pursuant to an Asset Purchase Agreement (the "APA"). The APA specified that this Court—not arbitration— is the exclusive forum for any disputes. GRV refuses to pay Atlanta for the assets it bought; and GRV has since sold the assets to Rugby LA. Under settled law, the APA's unambiguous forum-

selection clause controls this dispute. Moreover, Defendants have actively litigated this case for nearly 8 months, including asserting counterclaims invoking this Court's jurisdiction. Under recent Supreme Court precedent, Defendants decision to knowingly invoke this Court's jurisdiction is a waiver of the right to arbitrate and the Court should deny the Motion for that reason too.

Defendants claim that a dispute-resolution provision that governs Members of Major Leage Rugby applies here—even though Atlanta is undisputedly <u>not</u> a Member of MLR. Atlanta sold its assets to GRV years ago. Ignoring that undisputed fact, Defendants contend that this dispute is subject to an arbitration provision in the Second Amended and Restated Limited Liability Company Agreement of Major League Rugby, LLC (the "<u>Operating Agreement</u>"). Section 12.17(b) of the Operating Agreement gives the MLR Commissioner "exclusive, full, complete and final jurisdiction" over disputes between "two (2) or more of the Members" (the "<u>Arbitration Clause</u>"). The Operating Agreement defines "<u>Member</u>" as

> those Persons executing this Agreement as members of the Company, and listed on Schedule A, or those Persons otherwise becoming bound by this Agreement as members of the Company as provided in this Agreement, including any Substitute Members, in each such Person's capacity as a member of the Company.

D.I. 50-1, 12.

Atlanta is not a Member. Atlanta sold its assets years ago. Moreover, under both the Agreement for the Purchase and Sale of Assets between Atlanta and GRV (the "<u>APA</u>"), and the Asset Purchase Agreement between Rugby LA and Rugby ATL LLC[1] (the "<u>Rugby LA Agreement</u>"), Defendants expressly agreed to litigate any dispute related to the sale of the Team in this Court, or any other court in Delaware.

---

[1] Rugby ATL LLC is a wholly-owned subsidiary of GRV.

Arbitration is inappropriate here because the parties did not agree to it. Indeed, it is fundamentally unfair to compel Atlanta to arbitrate under an agreement it is not a party to when an express contract governs its dispute here.  Further, it is improper to require arbitration where Defendants waived the right to do so by engaging in nearly a year of litigation (including counterclaims) before seeking to compel arbitration. This Court should deny Defendants' Motion.

## STATEMENT OF FACTS

Several years ago, Atlanta sold GRV certain assets (the Team) and entered the APA to govern the sale of those assets. Under the APA, GRV was obligated to pay Atlanta $6,000,000 in six annual payments. In the APA the parties agreed to litigate any disputes about that sale under the APA in Delaware in this Court.  The forum-selection clause says:

> The parties agree that jurisdiction and venue in any action brought by any party pursuant to this Agreement shall properly (and exclusively) lie in any federal or state court located in the State of Delaware. By execution and delivery of this Agreement, each party irrevocably submits to the jurisdiction of such courts for itself and in respect of its property with respect to such action. The parties irrevocably agree that venue would be proper in such court and hereby waive any objection that such court is an improper or inconvenient forum for the resolution of such action.

D.I. 50-1, Article 12.16, p. 90.

Under the APA, GRV and Atlanta agreed that GRV would be taking Atlanta's place in MLR as a Member.  GRV—not Atlanta—is subject to the terms of the Operating Agreement. *Id.* at 74, Article 1.1(c) (Noting that one of the assets GRV purchased under the APA was, "membership in MLR as a 'Member Club' (as defined below) including, but not limited to, exclusive license to operate a professional rugby club in Atlanta, Georgia in accordance with the MLR operating agreement and Constitution."). Consistent with the APA, the relevant agreement provides that the transferor (here, Atlanta) is no longer considered a Member and is no longer bound by the terms.

3

D.I. 50-1, p. 40. The APA also granted Atlanta a security interest in all of GRV's assets, which included the Team. *Id.* at 75.

After purchasing the Team, but before paying all amounts due under the APA, GRV transferred the Team to its wholly-owned subsidiary, Rugby ATL LLC ("Rugby ATL"). Rugby ATL entered into the Rugby LA Agreement, which governed the sale of the Team from Rugby ATL to Rugby LA. The Rugby LA Agreement also contained the following forum-selection clause:

> By the execution and delivery of this Agreement, Seller and Buyer submit to the exclusive personal jurisdiction of any state or federal court in the State of Delaware, including in the Delaware Court of Chancery in New Castle County, in any Action arising out of or relating to this Agreement and the Ancillary Agreements.[2] In any such Action, each Party hereby irrevocably waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any such Action brought in such court and any claim that any such Action brought in such court has been brought in an inconvenient forum.

Ex, A, p. 24, Section 7.9.

Atlanta filed this lawsuit on April 29, 2024, after GRV failed to make a payment due under the APA on December 21, 2023. D.I. 1. Both parties answered, but only GRV filed counterclaims. D.I. 13; D.I. 14. Atlanta moved to dismiss those counterclaims, D.I. 22, and GRV amended the counterclaims in response, D.I. 36. Atlanta moved to dismiss GRV's amended counterclaims. D.I. 39. That motion is still pending before the Court. Now, almost a full year into the lawsuit, and facing the very likely prospecting of losing the motion to dismiss and owing Atlanta money under the APA, GRV concocts a new, very dubious legal theory that nonmember Atlanta is subject to an arbitration provision that governs Members.

Defendants agreed to litigate in Delaware courts, not arbitration. Atlanta is not a Member of MLR such that it is not bound by the terms of the Operating Agreement. Separately, Defendants

---

[2] "Ancillary Agreements" refer to three related agreements, including one titled the "Substitute Member Agreement," neither of which are the Operating Agreement. Nor does the Rugby LA Agreement refer to the Operating Agreement in any other provision. *See generally* Ex. A.

4

waived the right to compel arbitration by deliberately failing to timely invoke that right and instead asserting counterclaims and litigating this case for nearly a year before seeking to compel arbitration.

## LEGAL STANDARD

To compel arbitration, a court must determine whether (1) a "valid agreement to arbitrate exists" and (2) "the particular dispute falls within the scope of that agreement." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023). "Whether or not a party is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Johnson v. ACE Cash Express, Inc.*, 2014 WL 3721947, at *2 (D. Del. July 24, 2014). Arbitration agreements are treated "as enforceable as other contracts, but not more so." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023).

Federal courts apply "ordinary state-law principles that govern the formation of contracts" when determining whether an arbitration clause applies to a dispute. *Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 476 (D. Del. 1998). Under Delaware law, "an agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *4 (Del. Ch. Sept. 14, 2011) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974)). Delaware courts interpret these clauses in the context of the contract as a whole, and give the contract's "provisions their ordinary meaning." *Parra*, 25 F. Supp. 2d at 476 (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del.1992)).

## ARGUMENT

The Arbitration Clause does not govern the parties' dispute. The parties agreed to litigate disputes related to the sale of the Team exclusively in Delaware courts. Also, Atlanta is not an

5

MLR Member within the meaning of the Operating Agreement and it cannot be compelled to an arbitration it did not agree to. Finally. Defendants invoked this Court's jurisdiction for affirmative relief. Given that, Defendants waived the right to compel arbitration by knowingly failing to invoke it and instead asserting counterclaims against Atlanta.

**I.      THE PARTIES AGREED TO EXCLUSIVELY LITIGATE DISPUTES RELATED TO THE SALE OF THE TEAM IN DELAWARE COURTS.**

**A.      The APA's forum-selection clause requires GRV to litigate all disputes related to the sale of the Team in Delaware courts.**

The APA contains a forum-selection clauses that makes this Court, or any other court in Delaware, the exclusive venue for claims raised pursuant to the APA:

> Article 12.16 of the APA (between Atlanta and GRV): The parties agree that jurisdiction and venue in any action brought by any party pursuant to this Agreement shall properly (and exclusively) lie in any federal or state court located in the State of Delaware. By execution and delivery of this Agreement, each party irrevocably submits to the jurisdiction of such courts for itself and in respect of its property with respect to such action. The parties irrevocably agree that venue would be proper in such court and hereby waive any objection that such court is an improper or inconvenient forum for the resolution of such action.

So, the APA specifies Delaware courts as the exclusive venue for claims raised pursuant to the APA.

**B.      The Rugby LA Agreement's forum-selection clause requires Rugby LA to litigate all disputes related to the sale of the Team in Delaware courts.**

The Rugby LA Agreement contains a similar forum-selection clause:

> Section 7.9 of the Rugby LA Agreement (between GRV and Rugby LA): By the execution and delivery of this Agreement, Seller and Buyer submit to the exclusive personal jurisdiction of any state or federal court in the State of Delaware, including in the Delaware Court of Chancery in New Castle County, in any Action arising out of or relating to this Agreement and the Ancillary Agreements.[3] In any such Action, each Party hereby irrevocably waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any

---

[3] "Ancillary Agreements" refer to three related agreements, including one titled the "Substitute Member Agreement," neither of which are the Operating Agreement. Nor does the Rugby LA Agreement refer to the Operating Agreement in any other provision. *See generally* Ex. A.

>such Action brought in such court and any claim that any such Action brought in such court has been brought in an inconvenient forum.

Notably, the Rugby LA Agreement goes even further than the APA by applying Section 7.9 to all claims "arising out of or related to" the agreement, without limitation as to who must bring such claims to trigger Section 7.9. *See Decoration Design Sols., Inc. v. Amcor Rigid Plastic USA, Inc.*, 2020 WL 6482696, at *6 (D.N.J. Nov. 4, 2020) (Concluding that the plain meaning of the phrase "related to" is interpreted broadly to mean "an association with or reference to the applicable subject.").

Delaware courts permit enforcement of forum-selection clauses by non-signatories when (1) the clause valid; (2) enforcement of the clause is foreseeable; and (3) the claims arise from the non-signatories' standing relating to the agreement. *PPL Corp. v. Riverstone Holdings LLC*, 2019 WL 5423306, at *7 (Del. Ch. Oct. 23, 2019); *Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *7 (Del. Super. Ct. Apr. 10, 2024). Here, no party disputes the validity of the Rugby LA Agreement or Section 7.9, which is "presumptively valid and vigorously enforced in Delaware." *PPL Corp. v. Riverstone Holdings LLC*, 2019 WL 5423306, at *6 (Del. Ch. Oct. 23, 2019).

Atlanta's reliance on Section 7.9 is foreseeable because it is seeking its enforcement against the signatories to the Rugby LA Agreement, and because the Rugby LA Agreement expressly acknowledges and contemplates the APA and Atlanta's rights with respect to the Team. Ex. A, p. 39; *see also Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *10 (Del. Super. Ct. Apr. 10, 2024) (concluding that a non-signatory party can enforce a forum selection provision against a signatory party where such enforcement was foreseeable). The APA created a security interest to guarantee the payments that GRV owed Atlanta for the sale of the Team. Rugby LA purchased the Team while four annual payments remained on the APA. And not

7

only did the Rugby LA Agreement put Rugby LA on notice as to the APA, it did so in the context of "Potential Litigation" related to the sale of the Team. Ex. A, p. 39.

The broad language of Section 7.9 further supports finding foreseeability. It is triggered by "any Action arising out of or relating to" the Rugby LA Agreement. "Action" is defined as "any claim, action, suit, arbitration, proceeding, or investigation . . . asserted directly against Seller or any of its Affiliates." Ex. A, Section 1.1, p. 5. Rugby ATL LLC is the Seller. GRV is an Affiliate of Rugby ATL LLC because it is GRV's wholly-owned subsidiary and is directly controlled by GRV. *Id.* at 6 ("'Affiliate' means, with respect to any specified Person, any other Person that, at the time of determination, directly or indirectly Controls . . . such Person."); *id.* at 7 ("'Control' means, as to any Person, the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities, by Contract."). The Rugby LA Agreement, therefore, made Action expansive enough to capture all claims raised against GRV, without specifying who those claims must be raised by. The Rugby LA Agreement then expanded the reach of Section 7.9 to any such Action that relates to the Rugby LA Agreement. Thus, enforcement of Section 7.9 in a dispute based on the sale of the Team was not only foreseeable, it was expected.

Finally, this dispute arises from Atlanta's standing because it is based on the sale and ownership of the Team, Atlanta's security interest therein, and Rugby LA's rights to continued possession of the Team under the Rugby LA agreement. *See PPL Corp. v. Riverstone Holdings LLC*, 2019 WL 5423306, at *7 (Del. Ch. Oct. 23, 2019) (concluding that non-signatories to a forum-selection clause had standing to enforce it, even though their claims neither sought enforcement of the contract containing the clause or any benefits under the same, because their claims implicated the signatories' rights under said contract.). The Rugby LA Agreement purports

to convey the Team to it "free and clear of all Encumbrances." Ex. A, p.6, Section 2.2(a). Atlanta, of course, maintains that it has a right to foreclose on the Team via the security interest granted by the APA. Atlanta's dispute with Defendants, and specifically Rugby LA, centers on and implicates the provisions of both contracts. And both contracts contain forum-selection clauses that require litigation in Delaware courts.

In sum, both Defendants agreed to litigate this dispute in this Court.

### C. The forum-selection clauses supersede the Arbitration Clause.

The forum-selection clauses supersede the Arbitration Clause. A similar issue arose in *Am. Life Ins. Co. v. Parra*, where this Court enjoined ongoing arbitration proceedings that were brought based on an arbitration clause that the parties agreed to in 1991. 25 F. Supp. 2d 467 (D. Del. 1998). This Court relied on a subsequent forum-selection clause, agreed to in 1994, which provided that "'any interpretation or adjudication' related to the agreement is to take place 'in a court located in the State of Delaware United States of America.'" *Id.* at 477. The Court concluded that the forum-selection clause superseded the prior arbitration clause because the forum-selection clause "prevents a party from seeking to resolve disputes arising under the agreement in any forum other than a Delaware court." *Id.*

Here, like in *Parra*, the forum-selection clauses prevent the parties from seeking to resolve disputes related to the sale of the Team in any forum other than a Delaware court. Indeed, both clauses have language indicating that such disputes must be brought exclusively in Delaware courts, and that the parties waived any objection to litigating in Delaware courts.

Defendants do not dispute the validity of these clauses. Defendants merely argue that the APA incorporates the Operating Agreement, therefore, binding Atlanta to the Arbitration Clause. Defendants rely on Article 2.1 of the APA in support, but this reliance is misplaced. Article 2.1 states

9

> 2.1 <u>Organization; Qualification and Power of Seller</u>. The Seller (i) is a Georgia limited liability company duly organized, validly existing and in good standing under the laws of the State of Georgia and (ii) has full corporate power and authority to carry on the business in which it is engaged and to own and use the properties owned and used by it. *Attached as Exhibit A is an accurate complete copy of the operating agreement of the Company as in effect as of the date of this Agreement (the "Company Agreement").*[4]

D.I. 50-1, p. 76, Article 2.1 (emphasis added). The APA defines "Company" as "the ownership and operation of such Member Club"—*i.e.*, the Team. *Id.* at 74. So, when Article 2.1 refers to the "operating agreement of the Company" it is referring to the Team's operating agreement. It is not referring to the Operating Agreement at issue here.

Aside from the plain language of the terms described above, this interpretation makes sense for two reasons. One, when the APA intends to refer to MLR or the Operating Agreement it does so. The APA uses "MLR", not "Company," to refer to Major League Rugby. *Id.* The APA also expressly refers to the "MLR Operating Agreement," twice:

- <u>Article 1.1(c)</u> notes that, as part of the purchase of the Team, GRV was purchasing "membership in MLR as a 'Member Club' . . . including, but not limited to, exclusive license to operate a professional rugby club in Atlanta, Georgia in accordance with the *MLR operating agreement* and Constitution." (emphasis added). *Id*.

- <u>Article 2.5</u> is a representation that Atlanta "has all necessary rights to own and operate a 'Member Club' (as defined in the *MLR Operating Agreement* or Constitution) currently known as Rugby Atlanta (the 'Member Club'). (emphasis added). *Id.* at 76.

Two, Article 2.1 is a representation that Atlanta, as the "Seller," is in good standing and has the authority to operate its business, including the Team. *Id.* Given that the APA governed the sale of the Team, it would make sense to then refer to the Team's operating agreement. Referring to the

---

[4] Atlanta does not dispute that "Agreement" is defined in the APA preamble as the APA plus any "Exhibits, Annexes, and Schedules."

10

Operating Agreement, which governs a separate entity, would be contextually out of place. Therefore, the Operating Agreement was not incorporated into the APA.

So, Defendants are mistaken, the Operating Agreement does not apply here. Defendants expressly agreed to litigate this case in this Court.

**II.     ATLANTA IS NOT A MEMBER OF MLR.**

Nor is this a dispute between Members, and indeed the agreement Defendants attempt to invoke specifies that former Members (like Atlanta) are not subject to the arbitration clause. Specifically, Article IX of the Operating Agreement governs transfers of a Member's interest. Under Article 9.3, the transferor of an MLR team "shall have no further obligations under this Agreement with respect to that portion of its Interest that has been Transferred to the transferee." *Id.* at 42. Likewise, under Article 9.4, where a transferee is admitted to the MLR as a Substitute Member, the transferor "will cease to be a Member" of the MLR. *Id.* at Article 9.4. And "Substitute Member" is included in the definition of "Member." *Id.* at 12, "Members" ("'Members' means . . . those Persons otherwise becoming bound by this Agreement as members of the Company as provided in this Agreement, including any Substitute Members, in each such Person's capacity as a member of [MLR].").

The relevant conditions to becoming a "Substitute Member" under Article IX are as follows:

- The transfer must be approved by MLR Board of Directors. Article 9.1(b); Article 9.3(a).

- The transferor must intend for the transferee to be admitted as a Substitute Member. Article 9.3(b).

11

- The transferee must assume all obligations with respect to the transferred interest and agree to be bound by the Operating Agreement. Article 9.3(c).[5]

*Id.* at 40, 41.

All three of these conditions are met. The MLR Board of Directors approved the sale on December 16, 2021. *See* Ex. B, December 16, 2021 Board Approval of Sale; *see also* D.I. 13, Answer of Rugby LA, ¶ 15 (Rugby LA "[a]dmitt[ing] that GRV purchased the Team *and obtained MLR Approval*" (emphasis added)). And both Atlanta and GRV made clear their intent that GRV would be admitted as a Substitute Member, and bound by both the obligations of the Team and the Operating Agreement in Article 1.1(c), which included as one of the transferred assets "membership in MLR as a 'Member Club' (as defined below) including, but not limited to, exclusive license to operate a professional rugby club in Atlanta, Georgia in accordance with the MLR operating agreement and Constitution." D.I. 50-1, p. 74. In other words, once Atlanta effectuated the sale of the Team to GRV, Atlanta was no longer bound by the terms of the Operating Agreement, including the Arbitration Clause.

Defendants agree that Atlanta is no longer a Member. D.I. 50, p. 5; D.I. 13, Affirmative Defenses, ¶ 2 (Rugby LA's Affirmative Defense No. 2 stating that Atlanta is not currently a Member and saying Atlanta would need to "become" a Member: "granting Atlanta's requested relief of foreclosure would result in the Team ceasing operations entirely, unless MLR were to grant approval for Atlanta to become a member of the league."); D.I. 36, Affirmative Defenses, ¶ 2 (GRV's Affirmative Defense No. 2 implying the same). Defendants merely rely on their non-textual interpretation of the Operating Agreement and declare that because Atlanta was a Member

---

[5] Article 9.3(d) requires payment of all reasonable expenses incurred by MLR in connection to the review and approval of the transfer. Article 9.3(e) allows to MLR to receive and request an opinion by counsel that the transfer does not need to be registered under the Securities Act of 1933. Articles 9.3(d) and (e) are not at issue here. Especially given that the Membership interest once held by Atlanta is now held by Rugby LA and recognized by MLR.

in the past, this somehow binds Atlanta to the terms of the Operating Agreement in perpetuity. But the actual contract says the opposite. A transfer under Article IX of the Operating Agreement forecloses and defeats this argument. Notably, Defendants omitted any reference to "Substitute Member" or Article IX from their brief.

That Atlanta seeks foreclosure against Rugby LA (a right that exists in virtue of the APA, not the Operating Agreement) is of no consequence. Atlanta is not seeking to join MLR as a Member, Atlanta is seeking to enforce its rights under the APA and obtain its assets. The Operating Agreement contemplates such situation: where a transferee is not admitted as a Substitute Member, they are considered an Assignee. D.I. 50-1, p. 8, "Assignee". The transferor remains a Member, or Substitute Member, and remains bound by the Operating Agreement. *Id.* at 42. Moreover, the Arbitration Clause only applies to Members, not Assignees. Nor does any other provision in the Operating Agreement make Assignees bound by its terms—tellingly, the only provision that the Operating Agreement expressly binds Assignees to is Article IX, and only as to any subsequent transfer. *Id.*

So, if Atlanta regains possession of the Team in connection to this dispute, it would be as an Assignee. This is especially true given that Atlanta intends neither to become an MLR Member nor to be bound by the Operating Agreement, a prerequisite to Membership. *Id*. at 41, Article 9.3(c). Again, this scenario would not implicate the Arbitration Clause because Atlanta still would not be considered a Member.

Atlanta is not bound by the terms of the Operating Agreement. The Arbitration Clause does not apply to this dispute. Defendants' motion to compel arbitration must be denied as a result. Accordingly, there is no basis to impose a stay on this case.

### III. DEFENDANTS WAIVED THE RIGHT TO ARBITRATION BY LITIGATING THIS CASE FOR A YEAR AND ASSERTING COUNTERCLAIMS IN THIS COURT.

Defendants belatedly move to compel arbitration nearly one year into the litigation and after they have counterclaimed against Atlanta. They are doing so because they are likely to have their weak counterclaims dismissed. But their decision to assert counterclaims and litigate constitutes a waiver—as clarified by recent Supreme Court precedent. In this context, after nearly a year of litigation, and given Defendants' deliberate invocation of this Court's jurisdiction for affirmative relief, the Court should deny the Motion to Compel arbitration because Defendants waived that right.

Two years ago, the United States Supreme Court clarified that arbitration-specific rules around waiver are improper. Instead, "a federal court assessing waiver does not generally ask about prejudice. Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[T]he inquiry for waiver of arbitration right must be identical to the inquiry for waiver of other contractual rights." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d. Cir. 2023). As relevant here, waiver occurs "where a party has intentionally relinquished or abandoned a known right." *Id.* (citation omitted). The focus is on the party who held that right "and is informed by 'the circumstances and context of each case.'" *Id.* at 340. "Through their conscious decision to engage in litigation despite an existing arbitration agreement, litigants may consequently forfeit their right to arbitration." *Valli v. Avis Budget Rental Car Grp., LLC*, 2023 U.S. Dist. LEXIS 181799, at *37 (D.N.J. Oct. 10, 2023) (holding that parties "engaged fully in the litigation for five years without ever moving to arbitrate" and thus waived the right to do so).

In *White*, the Third Circuit concluded that Samsung acted inconsistent with an arbitration clause it belatedly tried to invoke. There, Samsung filed motions to dismiss and otherwise

14

attempted to litigate the case on the merits. 61 F.4th at 340. "Only after it was apparent that further litigation would be required, and it could not get the case fully dismissed before discovery, did Samsung attempt to arbitrate the remaining claim." *Id.* at 340. Samsung engaged in other litigation activity inconsistent with arbitration, including "an unopposed pro hac vice application . . . requested additional time to file a response to the second amended complaint" and otherwise "assented to all of the District Court's pre-trial orders and participated in numerous court conferences." *Id.* at 340.

This case is the same. Defendants' participation here is even more consistent with waiver than Samsung's in *White*. GRV asserted affirmative counterclaims—asking this Court to award it affirmative relief under the APA, invoking the APA's forum-selection clause in doing so, and otherwise actively litigating affirmative claims for relief against Atlanta. When paired with Defendants otherwise active and forthright participation in this case, it is proper to conclude that Defendants waived their argument for arbitration by failing to raise it at the outset. *See also J. Ambrogi Food Distrib. v. Teamsters Loc. Union No. 929*, 705 F. Supp. 3d 406, 416 (E.D. Pa. 2023) (holding that party waived right to compel arbitration by participating in litigation for nearly a year before moving compel arbitration). Indeed, Defendants waited to move to compel arbitration as they filed multiple amended complaints and assessed briefing on the motion to dismiss; like Samsung, Defendants wanted to wait-and-see if their merits arguments might pan out, and only sought to compel arbitration when it was clear they are unlikely to prevail on the merits.

## IV.    JURISDICTIONAL DISCOVERY

If this Court is not convinced by the record that Atlanta is not an MLR Member, then Atlanta respectfully requests that this Court permit discovery on this question. To obtain jurisdictional discovery, a plaintiff must articulate a good-faith reason for it that is neither futile nor the launch of a "dragnet 'fishing expedition.'" *Chumash Cap. Invs., LLC v. Grand Mesa*

15

*Partners, LLC*, 2024 WL 1554184, at *10 (Del. Super. Ct. Apr. 10, 2024). Atlanta submits that application of the Arbitration Clause depends on its status as a Member within the meaning of the Operating Agreement. Atlanta maintains that it is not a Member within the meaning of the Operating Agreement and that arbitration is inappropriate here. However, if the Court disagrees, then discovery will confirm the Arbitration Clause does not apply in this dispute. This is neither futile nor a "fishing expedition"; it is, instead, targeted to efficiently resolve the instant proceeding consistent with the arguments above.

## **CONCLUSION**

For these reasons, Atlanta respectfully requests that this Court DENY Defendants' motion to compel arbitration. There is no contract requiring it, and the actual contract specifies the forum as this Court. Defendants also waived any right to arbitration. And, even if they did not waive their right to arbitration, the Arbitration Clause does not apply because Atlanta is not a member.

If not, Atlanta respectfully requests limited discovery into the issue to confirm that Atlanta is not subject to arbitration because it is inapplicable and because Defendants waived that right through their active participation in this litigation for nearly a year before moving to compel arbitration.

| | |
|---|---|
| OF COUNSEL: | **CHIPMAN BROWN CICERO & COLE, LLP** |
| Brent R. Owen<br>**HAYNES AND BOONE, LLP**<br>675 15th Street, Suite 2200<br>Denver, C) 80202<br>(303) 382-6242<br>brent.owen@haynesboone.com |  */s/ Gregory E. Stuhlman*<br>Gregory E. Stuhlman (#4765)<br>Ryan M. Lindsay (#6435)<br>Mariska Suparman (#7271)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>(302) 295-0191<br>stuhlman@chipmanbrown.com<br>lindsay@chipmanbrown.com<br>suparman@chipmanbrown.com |
| Julian E. Sharp<br>**HAYNES AND BOONE, LLP**<br>1221 McKinney Street, Suite 4000<br>Houston, TX 77010<br>(713) 547-2333<br>julian.sharp@haynesboone.com | *Attorneys for Plaintiff MLR Atlanta, LLC* |

Dated: December 10, 2024

4934-2995-5333, v. 2